IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MACIEJ MURAKOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. |
| | ) | |
| UNIVERSITY OF DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT

### JURISDICTION

1. This action seeks to vindicate rights protected by the First and Fourteenth Amendments to the Constitution of the United States and is brought under 42 U.S.C. §1983. The Court has jurisdiction over this civil rights action pursuant to 28 U.S.C. §§1331(a) and 1343(a)(3) and (4). Ths Court has jurisdiction pursuant to 28 U.S.C. §§2201 and 2202 to declare the rights of the parties and to grant all further relief found necessary and proper.

### PARTIES

2. Plaintiff Maciej Murakowski, a resident of Newark, Delaware, is a nineteen year old male who, prior to the events described herein, was enrolled as a student at the University of Delaware.

3. Defendant the University of Delaware ("UD") is a public, state-sponsored educational institution organized and existing pursuant to Delaware law, specifically 14 Del.C. §5101 *et seq.*

### BACKGROUND

4. UD publicly presents itself as a staunch supporter of freedom of speech and the First Amendment. For example, in 2006, when the Wilmington *News Journal* reported that a UD

graduate student was alleged to be involved with a white supremacist hate group, the *News Journal* quoted then-UD President David P. Roselle as saying, "It is a personal affront when persons with hateful beliefs espouse those beliefs, insist upon their right to make public displays of their beliefs or otherwise attempt to spread their venom. But, a fundamental tenet of our nation is that my objection or, as in this case, the University's objection, is not sufficient reason to deny the right of free speech."

5. Similarly, in 2007, when the Wilmington *News Journal* reported that students attended a party wearing costumes deemed offensive, the *News Journal* quoted then-Pres. Roselle as stating that "First Amendment protections are sometimes a little bit inconvenient for us when we want to perhaps punish someone who we think by all rights deserves to be punished. But it's the law of the land, and it's a wonderful law and one we all should happily abide by. So it is what it is, and you have to deal with it."

6. Section 3 of the UD Faculty Handbook states, in pertinent part, that "Members of the University Community are free to examine and to discuss all questions of interest to them and to express opinions publicly and privately."

7. UD permits its students access to its Internet resources, including the right to set up their own websites. UD's Policy for Student Use of Computing Resources for Home Pages states that "Students may also participate in the exchange of information on the Internet through newsgroups and publish personal home pages on the World Wide Web." The same policy also states that UD "will not impose any restraints on, nor make any effort to monitor the content of, communications other than those imposed by applicable Federal, State or local laws, including laws regarding the right to privacy and laws which prohibit defamatory material."

8. Mr. Murakowski matriculated and began classes at UD in 2005. In June, 2005, Mr. Murakowski set up a website using UD's server, with the web address http://udel.edu/~kuactet. The website contained essays by Mr. Murakowski on a variety of topics, from the look of Google's home page design to the names of D.P. Dough's pizza products to Dane Cook, to fake movie reviews, to posting pretty pictures of the sky, to works of fiction, often adopting a cynical or sardonic or satirical tone. Mr. Murakowski never advertised the existence of this website.

9. Some of these postings also include references to violence and sexual abuse, for satirical or shock effect. For example, in a mock review of Star Wars Episode 3, Mr. Murakowski made reference to an imaginary scene where Darth Vader starts shooting and cutting up children. In another mock review of Charlie and the Chocolate Factory, Mr. Murakowski refers to an imaginary scene where Oompa-Loompas are found dead, hanging on a meat hook.

10. In another posting, commenting on as list indicators for potential rapists found on Wikipedia, such as "extreme emotional insensitivity and egotism," Mr. Murakowski writes, "Reading over those, all I can say is 'Shit.' No matter how I interpret them, shit. Don't walk with me at night, ladies."

11. In another post, Mr. Murakowski described a favored pair of black gloves as "the bitch-chokingest gloves in the entire universe."

12. In a posting dated January 12, 2007, titled "Talking About Sex," Mr. Murakowski lists various imaginary sexual acts, including "The Emo...shake and cry whenever your partner touches you," and "The Good Wife...make dinner," and "The Rocket Scientist...Obtain an advanced degree from a prestigious university. Become a renowned expert in your field." These silly and nonsensical sex acts are mixed with darker and more violent acts such as "The Sociopath...On a

Friday night, leave her a trail of rose petals leading to a hot bath. Wash her gently, using oils and scented soaps where appropriate. Dry her, then take her into the bedroom for a sensual massage (be careful, you are not kneading dough!) Kiss her and tell her she is beautiful. Slowly let your hands explore her body. Kiss her some more. Then make sweet gentle love to her for hours. After you both climax, hold her and let her fall asleep in your arms. Then set her on fire," and "The John F. Kennedy...Position your partner halfway on the bed, facing up, so that her legs are hanging off the edge. You stand facing her, lift her legs, put her ankles on your shoulders, and lean forward as far as you can. Then you kill the President." The piece ends with referring to disposing of the dead body of a sex partner.

13. On April 19, 2007, Mr. Murakowski's father (who is a research engineer at UD) received a call from Cynthia Cummings, the Vice President of Campus Life. Ms. Cummings expressed her concern about the posting "Talking About Sex," and asked that Mr. Murakowski be removed from campus for the night, and come to see her the next day.

14. On April 20, 2007, at approximately 3:15 p.m., Mr. Murakowski and his father met Ms. Cummings at her office. Ms. Cummings confronted Mr. Murakowski about the "Talking About Sex" posting. Mr. Murakowski explained that it was a humor piece. Ms. Cummings said "I don't think its funny, and I don't think anyone else does either." Mr. Murakowski responded that he respectfully disagreed.

15. Ms. Cummings presented Mr. Murakowski a letter, stating that there had been complaints about the website because of its "sexually graphic, hostile and violent" content, including "racist, sexist, anti-Semitic, and homophobic statements." The letter went on to state that, because of these reports:

> "1.   You will be charged through the University's judicial system with violating the Responsible Computing Policy.
> 2.   You will be prohibited from staying in your residence hall room or attending classes until you receive a psychiatric assessment.
> 3.   You must provide me with a letter from a licensed mental health provider that indicates that you are not a threat to yourself and to others.
> 4.   You must sign a waiver granting me permission to speak with that licensed mental health provider to confirm his or her conclusions and to learn about any recommendations he or she might have pertaining to mental health treatment."

16.   Ms. Cummings also presented Mr. Murakowski with a document charging him with one count of violating UD's Disruptive Conduct policy, and one count of violating UD's Responsible Computing and Use of University Computing Resources policy. UD gave the following explanation of the charges in the document: "Mr. Murakowski is alleged to have used University computer resources for non-academic purposes to create a post a website (http://copland.udel.edu/~kuactet). The contents of this site have caused concern and alarm to university community members. The information posted is graphic in nature, violent, derogatory, hostile and disturbing."

17.   Mr. Murakowski asked for permission to return to his dorm room for the purpose of obtaining some items to take with him back to his parents' house. Ms. Cummings granted that permission. Mr. Murakowski returned to his dorm room, picked up some items, and left the campus While there he posted a notice on his door for his friends, telling them that he had been suspended.

18.   On April 23, 2007, Mr. Murakowski was psychologically evaluated by Philip R. Braun, Ph.D. Dr. Braun wrote a letter to Ms. Cummings in which he stated:

> Upon my review of his writings and his responses to me during the clinical assessment, I do not believe that this young man is a threat to

>himself or others. Some of his writings are insensitive and depending on the context in which they are read can be seen as disrespectful to some individuals. While I certainly do not condone such expressions, I do not believe that they reflect any potential for physically acting out against any member of any of the groups referenced in your letter to Mr. Murakowski dated April 20, 2007.

19. On April 24, 2007, Mr. Murkowski delivered Dr. Braun's letter to Ms. Cummings, and asked for permission to return to his classes and his dormitory room, as the conditions listed in the letter had been met. Ms. Cummings denied the request, stating "I don't care what that letter says, you may not return to class until I say so." Mr. Murakowski then left.

20. As a result of UD's actions, Mr. Murakowski missed classes on April 23, 24, 25 and 26. At around 5:00 p.m., Mr. Murakowski and his father received a call from Ms. Kathryn Goldman, a director of the UD Office of Judicial Affairs, asking them to come to see her. Ms. Goldman told Mr. Murakowski that he could return to attending his classes, but that pending resolution of the charges he could not return to his dorm room and that, based on a report from Ms. Cummings that Mr. Murakowski had returned to his dorm on other occasions, he was also being charged with Failure to Comply. Ms. Goldman handed Mr. Murakowski a letter from her to the same effect.

21. A hearing on the charges was held on May 2, 2007. Lt. Rahmer, a UD police officer testified that there had been a complaint about Mr. Murakowski's website on April 8, 2007, but that after investigation it was concluded that nothing illegal had occurred.

22. The "witness" to the charge of "Disruptive Conduct" was a female student who claimed to have an "incident" with Mr. Murakowski. However, this student did not testify at the hearing. Instead, an e-mail was submitted by UD as evidence. The e-mail is not from the student, but from a third party, addressed to Holli Harvey, Assistant Director, describing that third party's

interaction with the female student. The e-mail stated that the female student was visibly shaking, purportedly arising from an "incident" involving Mr. Murakowski on or prior to April 25, 2007. The e-mail does not describe the "incident," nor does it make any reference to Mr. Murkowski's website. A true and correct copy of the e-mail is appended hereto as Exhibit A.

23. Given that neither the female student nor the author of the e-mail were present at the hearing, Mr. Murakowski had no opportunity to ask either of them questions, to test the validity and reasonableness of any claim that his website grievously affected her.

24. Several female UD students testified that they were not disturbed or threatened by the content of Mr. Murakowski's website.

25. On May 23, 2007, the University of Delaware Office of Judicial Affairs issued a letter from Scott F. Mason, University Hearing Officer, addressed to Mr. Murakowski. In the letter, Mr. Mason ruled that Mr. Murakowski was not guilty of violating the Responsible Computing Policy, but guilty of the Disruptive Conduct Policy and guilty of the Failure to Comply Policy.

26. Mr. Mason's ruling is littered with references to the content of Mr. Murakowski's website, which he describes as containing "material degrading, demeaning and violent toward women, as well as advocating violence toward others or in general," "racist and/or sexist," "filled with violence," and "even some pieces that may start out wittily or humorously continue to descend into nothing more than a violent end or a violent solution." Mr. Mason's concluded that the content of Mr. Murakowski's website justified a finding of guilty of Disruptive Conduct, stating that "you are responsible for putting the content there and for what outcomes may occur as a result of reviewing the content." Mr. Mason also stated that "even if you content your site is satire that it too could cause the same response, thus being disruptive to the community in which you live."

27. As a sanction, Mr. Murakowski was suspended from classes and banned from all UD facilities through the end of Fall 2007 and thereafter would be readmitted after reapplying to ID through the Admissions Office. If readmitted, Mr. Murakowski would be banned from all UD-owned residence halls through graduation. Additionally, if readmitted, Mr. Murakowski would be placed on "Deferred Expulsion" status, meaning that if Mr. Murakowski were to again be adjudicated as having violated the UD Code of Conduct, he would be expelled.

28. In accordance with UD protocol, Mr. Murakowski appealed this ruling. The Appellate Judicial Board rejected his appeal by letter dated July 2, 2007.

29. Mr. Murakowski has been suspended and banned from UD. Consequently, he has lost his job with the UD Department of Electrical and Computer Engineering. By virtue of the delay in his education, he will lose opportunities in the job market. His website no longer appears on the UD server.

## COUNT I
(First Amendment to the Constitution of the United States)

30. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-29 above as if fully set forth herein.

31. The free speech rights under the First Amendment of students at public universities such as UD are the same as those of any member of the community.

32. UD makes available its Internet server for students to create web sites with no restrictions on content other than that they not violate state or federal law, and that the sites may not be used for commercial purposes. As such, UD may not, consistent with the First Amendment, punish any student based on the content of his or her website, even though the content may have an

adverse emotional impact on some readers. In finding Mr. Murakowski guilty of Disruptive Conduct because of the content of his web site, UD violated his free speech rights under the First Amendment.

33. Alternatively, assuming that the content of a web site can lawfully serve as a basis for a charge of Disruptive Conduct, UD violated Mr. Murakowski's rights under the First Amendment by finding him guilty of Disruptive Conduct in the absence of evidence of a material and substantial disruption of the educational process. Any disruption in this case was minimal – no classes were cancelled, no widespread disorder was reported as a result of this website (which had been operational for approximately two years). There was no evidence that teachers were incapable of teaching or controlling their classrooms. Moreover, there was no factual basis to anticipate material and substantial disruption, especially since there was no evidence that Mr. Murakowski's website was known to the student body generally, or a meaningful portion thereof.

34. UD learned of Mr. Murakowski's website, disapproved of its content, and retaliated against Mr. Murakowski by suspending him.

35. UD's suspension of Mr. Murakowski violated his rights under the First Amendment to the Constitution of the United States, as applied to the states by the Fourteenth Amendment, and 42 U.S.C. §1983.

## COUNT II
(Fourteenth Amendment to the Constitution of the United States)

36. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-35 above as if fully set forth herein.

37. Mr. Murakowski was denied due process in that he was not afforded the opportunity to confront the witness against him on the Disruptive Conduct charge. UD's claim was that Mr. Murakowski's website was disruptive because it had an adverse emotional effect upon some of the readers, and that the one complaining witness had an "incident" with Mr. Murakowski, which incident was never detailed. Further, that e-mail did not make any reference to Mr. Murakowski's website. Not only did the witness not appear and testify, but the e-mail put into evidence was not from the witness, but was an unidentified third party's report of a meeting with the witness. That third party also was not present or subject to questioning. This renders the "evidence" double hearsay.

38. Where a charge is dependant upon the witness' subjective emotional state and an unexplained "incident," and the penalty is suspension, an accused must have the opportunity to test the veracity of the claim. Failure to provide such an opportunity in these circumstances constitutes a denial of due process.

39. Additionally, UD failed to follow its own procedures. Mr. Murakowski was not offered an opportunity to cease the allegedly disruptive conduct before being denied access to classes and his dorm room and being subjected to disciplinary action, as required by Section 4 of the Faculty Handbook relating to Academic Freedom and Standards of Conduct: Distribution of Published Materials on Campus, and Section 4 of the Faculty Handbook relating to Academic Freedom and Standards of Conduct: Disruptive Behavior.

40. UD also denied Mr. Murakowski due process by denying him access to his dorm room after he delivered a letter from a licensed mental health provider, in the absence of any

emergency and in the absence of any finding of misconduct by a properly constituted tribunal or need by a Behavioral Review Committee, per the Student Guide to University Policies.

41. UD's failure to abide by its own policies and denying Mr. Murakowski the right to confront his accuser prior to imposing discipline violated his rights under the First Amendment to the Constitution of the United States, as applied to te states by the Fourteenth Amendment, and 42 U.S.C. §1983.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Maciej Murakowski respectfully requests that this Court enter judgment in his favor and award the following relief:

1. Declare that UD's disciplinary action against Mr. Murakowski violated his rights under the First and Fourteenth Amendments to the Constitution of the United States;

2. Declare that Mr. Murakowski cannot be disciplined for statements he posted on a web site;

3. Enter an injunction requiring UD to cease punishment or sanction against Mr. Murakowski on account of his constitutionally protected speech, including:

   a. reinstating Mr. Murakowski as a student at UD;

   b. reinstating to Mr. Murakowski all privileges to which he was and may be entitled as if no disciplinary infraction had occurred;

   c. giving Mr. Murakowski credit for all classes he would have taken during the period of suspension;

    d. sending letters to any party which UD had notified about the disciplinary action, advising that the imposition of suspension was in error, and that the suspension has been withdrawn; and

    e. expunging from Mr. Murakowski's school records all reference to the incident in question;

  4. Award all reasonable damages in favor of Mr. Murakowski and against UD in an amount to be determined at trial, along with punitive damages;

  5. Award Mr. Murakowski's costs and attorney's fees pursuant to 42 U.S.C. §1988; and

  6. Grant such other and further relief as the Court deems just and appropriate.

/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for plaintiff Maciej Murakowski

Dated: August 1, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MACIEJ MURAKOWSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. |
| | ) |
| THE UNIVERSITY OF DELAWARE, | ) |
| | ) |
| Defendant. | ) |

**DECLARATION OF MACIEJ MURAKOWSKI**

1. My name is Maciej Murakowski. I am over eighteen years of age and have personal knowledge of the facts contained in this Declaration.

2. The facts alleged in the foregoing Complaint are true to the best of my knowledge.

3. I declare under penalty of perjury under the laws of the United States and the State of Delaware, pursuant to 28 U.S.C. §1748, that the foregoing is true and correct. Executed on this 30th day of July, 2007 in Newark, Delaware.

_____
Maciej Murakowski

JS 44 (Rev. 11/04)           **CIVIL COVER SHEET**     07-475

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
MACIEJ MURAKOWSKI

**DEFENDANTS**
UNIVERSITY OF DELAWARE

(b) County of Residence of First Listed Plaintiff: NEW CASTLE
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: New Castle
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
FINGER & SLANINA, LLC
1201 ORANGE ST, STE. 725, WILMINGTON, DE 19801

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☒ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights / ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 1983
Brief description of cause:
VIOLATION OF RIGHTS UNDER FIRST AND FOURTEENTH AMENDMENTS

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE: 8/1/07
SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**
RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 07-475

# ACKNOWLEDGMENT OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____1____ COPIES OF AO FORM 85.

____8/1/07____  
(Date forms issued)

____[signature]____  
(Signature of Party or their Representative)

DAVID L. FINGER  
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action