IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MACIEJ MURAKOWSKI,        )
        )
        Plaintiff,        )
        )
        v.        )    C.A. No. 07-475 MPT
        )
UNIVERSITY OF DELAWARE,        )
        )
        Defendant.        )

**REPLY BRIEF OF MACIEJ MURAKOWSKI
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

**- and -**

**ANSWERING BRIEF OF MACIEJ MURAKOWSKI
IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT UNIVERSITY OF DELAWARE**

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for plaintiff Maciej Murakowski

Dated:  April 25, 2008

## <u>TABLE OF CONTENTS</u>

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CORRECTION OF UD'S MIS-STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     MR. MURAKOWSKI'S WEBSITE POSTINGS ARE ENTITLED TO FIRST
       AMENDMENT PROTECTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.     MR. MURAKOWSKI'S POSTINGS DO NOT CONSTITUTE A "TRUE
              THREAT." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B.     THERE WAS NO SUBSTANTIAL DISRUPTION JUSTIFYING PUNISHMENT
              OF LAWFUL SPEECH. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.    MR. MURAKOWSKI WAS DENIED DUE PROCESS. . . . . . . . . . . . . . . . . . . . . . . . 12

III.   THE CONVICTION FOR FAILURE TO COMPLY DOES NOT JUSTIFY AFFIRMING
       THE SUSPENSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.    THE COURT SHOULD AWARD MR. MURAKOWSKI HIS COSTS, DAMAGES AND
       ATTORNEY'S FEES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# **TABLE OF AUTHORITIES**

## **Cases**

*Allen v. Oregon State Penitentiary Corrections Div.*, 581 P.2d 964 (Or. App. 1978).. . . . . . . . . 16

*Barber ex rel. Barber v. Dearborn Public Schools*, 286 F.Supp.2d 847 (E.D. Mich. 2003).. . . . 11

*Barrett v. Virginia State Bar*, 611 S.E.2d 375 (Va. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bender v. Williamsport Area School Dist.*, 741 F.2d 538 (3rd Cir. 1984), *vacated on other grounds*, 475 U.S. 534 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bleicker v. Board of Trustees of Ohio State University, College of Veterinary Medicine*, 495 F.Supp. 1381 (S.D. Ohio 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Boim v. Fulton County School Dist.*, 494 F.3d 978 (11th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 10

*Brandenburg v. Ohio*, 394 U.S. 444 (1969).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Burdge v. State Bd. of Medical Examiners*, 403 S.E.2d 114 (S.C. 1991). . . . . . . . . . . . . . . . . . . 16

*Clark v. Dallas Ind. School Dist.*, 806 F.Supp. 116 (N.D. Tex. 1992). . . . . . . . . . . . . . . . . . . . . 11

*Husain v. Springer*, 493 F.3d 108 (2nd Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*IOTA XI Chapter of Sigma Chi Fraternity v. George Mason University*, 773 F.Supp. 792 (E.D. Va. 1991), *aff'd*, 993 F.2d 386 (4th Cir. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Killion v, Franklin Regional School Dist.*, 136 F.Supp.2d 446 (W.D. Pa. 2001). . . . . . . . . . . . 11

*Layshock v. Hermitage School Dist.*, 496 F.Supp.2d 587 (W.D. Pa. 2007). . . . . . . . . . . . . . . . 11

*Morse v. Frederick*, 126 S.Ct. 2618 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nicholson v. Bd. of Educ. Torrance Unified School Dist.*, 682 F.2d 858 (9th Cir. 1982). . . . . . . 4

*Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 23 F.Supp.2d 1182 (D. Or. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ryan v. Hofstra University*, 324 N.Y.S.2d 964 (N.Y. Supr.1971).. . . . . . . . . . . . . . . . . . . . . . . . . 12

*Saxe v. State College Area School Dist.*, 240 F.3d 200 (3rd Cir. 2001). . . . . . . . . . . . . . . . . . . . 10

*Sypniewski v. Warren Hills Regional Bd. Of Educ.*, 307 F.3d 243 (3rd Cir. 2002), *cert. denied*, 538 U.S. 1033 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503 (1969). . . . . . . . . . . . . . . . . 10

*U.S. v. Baker*, 890 F.Supp. 1375 (E.D. Mi. 1995), *aff'd*, 104 F.3d 1492 (6th Cir. 1997). . . . . . . 6

*U.S. v. Khorrami*, 895 F.2d 1186 (7th Cir. ), *cert. denied*, 498 U.S. 986 (1990). . . . . . . . . . . . . 8

*U.S. v. Veifhaus*, 168 F.3d 392 (10th Cir.), *cert. denied*, 527 U.S. 1040 (1999). . . . . . . . . . . . . . 8

*Virginia v. Black*, 538 U.S. 343 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Weaver v. Nebo School Dist.*, 29 F.Supp.2d 1279 (D. Utah 1998). . . . . . . . . . . . . . . . . . . . . . . . 11

## **Other authorities**

42 U.S.C. §1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

D. Del. Local Rule 7.1.3(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## SUMMARY OF ARGUMENT

1.      Denied.  Mr. Murakowski does not assume that a student in a disciplinary proceeding in a public institution has the same rights as a criminal defendant.  Mr. Murakowski merely argues that, being entitled to some form of due process, he is entitled to fundamental fairness, which was not provided in the hearing.

2.      Denied.  UD has not demonstrated that suspension was a mandatory sanction for the Failure to Obey charge, or that it would necessarily have been the resulting sanction in the absence of the Disruptive Conduct charge and the consideration of the content of his website, or that any such suspension for Failure to Obey would be sustained on appeal.

3.      Denied.  There was nothing in Mr. Murakowski's postings that communicated any serious intent to act, much less act against any reasonably identifiable person or group of persons. Moreover, the full context of the postings reveal that a reasonable reader would not have taken the statements as threats.

4.      Denied.

5.      Denied.

## CORRECTION OF UD'S MIS-STATEMENT OF FACTS

UD has made several incorrect statements of fact which, although not constituting a dispute of material fact precluding summary judgment, require clarification to avoid misleading the Court.

• UD claims that Mr. Murakowski "was immediately removed from his dormitory and advised that he could not return to campus...." (UD's Answering Brief ("UDAB") 5). At this point Mr. Murakowski was told he could not return to his dorm. He was not barred from campus at this point.

• UD claims that Mr. Murakowski was allowed to return to his dorm room with his father, and now asserts that Mr. Murakowski "flout[ed] the University's rules and regulations" by returning unaccompanied. (UDB 7 & n.4). There is no evidence that UD ever instructed Mr. Murakowski to return to his dorm room only with his father, and any such suggestion is false.

• "Contrary to Murakowski's claim in his Complaint and Brief that he never advertised the existence of his website...Murakowski acknowledged during his hearing that he placed materials on his dormitory door directing students to his website." (UDAB 8). The record does not support this. Although Mr. Murakowski posted some of his writings on the door, there is no evidence that, prior to his suspension, any of them contained a URL or gave any indication that the writings were available anywhere else.

• "Ms. Cummings explained to Murakowski that, while she had spoken with Dr. Braun that morning, they had not completed their conversation and she was waiting for a letter from Dr. Braun." (UDB 7). There is no evidence that Ms. Cummings ever made any such representation to Mr. Murakowski, and UD has not identified any such evidence (the interrogatory response cited by UD does not say anything about so informing Mr. Murakowski).

2

• "Later that afternoon, Ms. Cummings received Dr. Braun's letter via facsimile and learned that Dr. Braun had not seen all of Murakowski's postings." (UDB 8). The letter included in UD's appendix is simply the same letter that Mr. Murakowski hand-delivered to Ms. Cummings. (Murakowski Decl. Ex. E). Moreover, the letter does not state that Dr. Braun had not seen "all" of Mr. Murakowski's postings. It says that he saw 25 pages' worth. Additionally, UD does not contradict Mr. Murakowski's declaration that, although Ms. Cummings only instructed him to show Dr. Braun the essay "Maciej's definitive guide to sex," he went beyond that and printed the entire website out for Dr. Braun's review. (Murakowski Decl. ¶3).[1]

• "In addition, the student informed her academic advisor that her fear was affecting her studies and she therefore changed all of her classes to 'listener' status." (UDB 9). There is nothing in the record showing that the student changed "all" of her classes. Indeed, the e-mail from Holli Harvey that was introduced into evidence states that "she was requesting to change [blacked out] for 07S from a standard grade to an audit (listener} status." (Murakowski Decl. Ex. F). The blacked out portion is not long enough to permit the phrase "all her classes." The short length of the redaction disturbingly suggests that it may have been only one class that was changed. Indeed, if all it said "all classes" (thereby posing no risk of Mr. Murakowski locating her) instead of specifically identifying one class she was attending, why would it have been redacted?[2]

---

[1]

UD does not explain why, if Ms. Cummings continued to be concerned that Mr. Murakowski was a threat to public safety, she did not continue her inquiry with Dr. Braun. The clear inference is that all UD was concerned about was one nervous female student, and once Mr. Murakowski was banished from the dorm, UD believed it had solved the problem. Of course, if Mr. Murakowski was truly a threat, removing him only from his dorm would hardly secure the safety of the campus.

[2]

UD and its counsel have a duty of candor to the Court. If that blacked-out section indicates
(continued...)

## ARGUMENT

### I.    MR. MURAKOWSKI'S WEBSITE POSTINGS ARE ENTITLED TO FIRST AMENDMENT PROTECTION.

UD does not dispute that it is a "state actor" for purposes of 42 U.S.C. §1983.  UD does not dispute that it created a public forum, which entitled the users (including Mr. Murakowski) to strong First Amendment protection for the content of the users' speech.  Further, UD does not seriously dispute that Mr. Murakowski's First Amendment rights are equal to that of any adult, and are to be protected accordingly and not judged according to the more restrictive standards applied to high school students, and that the actions of UD are not to be accorded the same deference accorded high school teachers and administrators.[3]

UD instead argues that (1) Mr. Murakowski's website postings constituted a "true threat," and so are not protected by the First Amendment, and (2) even if not a true threat, UD was permitted to punish him for the content of his postings.  However, as shown below, UD's arguments do not bear scrutiny.

### A.    MR. MURAKOWSKI'S POSTINGS DO NOT CONSTITUTE A "TRUE THREAT."

UD seeks to have Mr. Murakowski's writings designated a "true threat," thereby removing them from First Amendment protection.  In his opening brief, Mr. Murakowski demonstrated that

---

[2](...continued)
that the student changed something less than all of her classes, which would be a relevant fact, they have an obligation to disclose that fact.

[3]

    *See Bender v. Williamsport Area School Dist.*, 741 F.2d 538, 547-48 (3rd Cir. 1984), *vacated on other grounds*, 475 U.S. 534 (1986) (noting differences between high schools and universities); *Nicholson v. Bd. of Educ. Torrance Unified School Dist.*, 682 F.2d 858, 863 n.4 (9th Cir. 1982).

his postings do not satisfy the test for a "true threat" for several reasons. Nothing in UD's answering brief disproves that conclusion.

As noted in Mr. Murakowski's opening brief, a "true threat: consists of a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. *Virginia v. Black*, 538 U.S. 343, 359-60 (2003). In this case, there is no expression of intention to act, and no "serious" expression.

First, none of his statements express a serious intention to actually act. Nowhere does he say that he actually intends to go out and murder, main, rape, torture, choke, or otherwise hurt anyone. Merely fantasizing or expressing an interest in those topics does not constitute an intention to act. UD has not pointed to any language demonstrating any such intent.

UD challenges this by stating that "*his* intentions and *his* gloss on his own words simply don't matter." (UDAB 17). Correct as stated, but meaningless. There must be a statement of intention. Does UD suggest that anyone who describes murder and torture in the present or future tense, or expresses a liking for such heinous acts, makes a "true threat"? Where is the support for that (other than UD's own indignation)?

Contrary to UD's position, the First Amendment protects general advocacy of violence where there is no imminent danger of incitement. *Brandenburg v. Ohio*, 394 U.S. 444 (1969). Where is the indicia of imminency here? Indeed, Mr. Murakowski's postings were live for several months with no indication of physical harm to anyone.

Second, there are numerous things in Mr. Murakowski's writings which signaled to a reasonable reader that he was not to be taken seriously, including self-deprecating statements, such as referring to himself as a "spindly pale virgin" who "won't be having sex anytime soon," and

including amongst his description of sex acts humorous and nonsensical acts such as "The Emo...shake and cry whenever your partner touches you," and "The Good Wife...make dinner," and "The Rocket Scientist...Obtain an advanced degree from a prestigious university. Become a renowned expert in your field."

Mr. Murakowski is not arguing here that his subjective intent was to be humorous. He is arguing that there is objective evidence that the tone and intent of the pieces were such that a reasonable reader (presuming reasonable intelligence and critical analysis functions) would not interpret the writings as serious, although they might find them offensive.

UD does not address these specific and material points at all, or explain why a reasonable reader, faced with these indicators, would interpret them in context as "serious" expressions of intent. Instead, UD chooses to ignore them[4] in favor of rhetorical flourishes with no substantive reasoning behind them. "It cannot be seriously argued that these postings were not threatening," declaims UD. (UDAB 17). But UD confuses talking about violence with threatening violence. Expressing a personal taste for violence does not equal an expression of intent to commit violence. *U.S. v. Baker*, 890 F.Supp. 1375, 1386-88 & n.16 (E.D. Mi. 1995), *aff'd*, 104 F.3d 1492 (6th Cir. 1997).[5]

---

[4]

Of course, it would be improper for UD to withhold their arguments for their reply brief. D. Del. Local Rule 7.1.3(c)(2).

[5]

UD makes three responses to the *Baker* case. The first is to state that it disagrees with the decision, and prefers the appellate dissent. (UDAB 19 n. 13). However, the dissent does not find that the e-mails addressed by the lower court (and in Mr. Murakowski's opening brief) constituted a "true threat." Rather, the dissent focuses on a separate Internet posting naming an actual person as a potential victim. All the dissent says about the e-mails is that they constituted evidence of conspiracy. 104 F.3d at 1506-07. As such, the dissent does not provide any support for UD's

(continued...)

Third, the postings do not identify a specific individual or group of individuals. It does not even identify a geographic area. UD responds that such is not required. But the cases cited by UD do not support its claim. First, *Virginia v. Black* involved a facial challenge to a criminal statute. All criminal statutes are of general application. By contrast, *Baker* involved a criminal statute of general application, but analyzed the First Amendment issue on an "as applied" basis, according to the facts of the case. The Supreme Court in *Black* did not hold that merely burning a cross is punishable because it intimidates people generally, without regard to specific personage. To the contrary, the Supreme Court reversed one conviction, where a cross was burned at a Klan rally, and vacated and remanded the other convictions, where crosses were burned on other people's property.[6]

---

[5](...continued)
position.

UD's second point appears to be that the First Amendment analysis for a "true threat" differs in the context of a criminal statute from the context of college disciplinary proceedings. (UDAB 19). UD cites no authority for that proposition, for obvious reasons.

UD's final point about *Baker* is that, notwithstanding the dismissal of criminal charges, Mr. Baker was suspended from the University of Michigan, and so the result should be no different here. (UDAB 19). Of course, there is no legal precedent discussing what occurred at the University of Michigan, and so the undocumented events there can have no bearing here.

(Although this is admittedly inadmissible evidence, counsel for Mr. Murakowski contacted counsel for Mr. Baker, who advised that (i) Mr. Baker chose not to challenge the suspension, and decided instead to continue his education elsewhere, and (ii) Mr. Baker's suspension was based, in part, on a posting in which he threatened a specific identified female student with violence, a fact not present here, and a fact which, depending on the wording and context, would make the posting more likely to qualify as a "true threat"). As such, UD's attempt to compare this case to Mr. Baker's university disciplinary experience is incomplete and compares apples and oranges.

[6]

The Supreme Court upheld the statute in *Black* because it had a specific intent requirement, *i.e.*, it required proof that the party burning the cross had an intent to instill fear in a specific individual or group of individuals. Moreover, the Supreme Court held that Virginia's jury instruction

(continued...)

This proves that, notwithstanding the general applicability of the criminal statute, each case had to be decided on its own facts to determine whether the First Amendment was violated, and nothing in *Black* supports the conclusion that a general discussion of violence toward an entire gender or race qualifies as a "true threat" taking the speech outside the protection of the First Amendment.

In the second case cited by UD, *U.S. v. Khorrami*, 895 F.2d 1186 (7th Cir. ), *cert. denied*, 498 U.S. 986 (1990), although the threat referred to "executing" Jews generally and not to any specific Jews, the threat was delivered to a specific Jewish group and location – the New York headquarters of the Jewish National Fund.   This narrowed it down.   Had such statements been more widely disseminated, such that the intended victim was not discernable, it would not have constituted a true threat.   *Compare Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 23 F.Supp.2d 1182 (D. Or. 1998) (widely disseminated bumper stickers calling for the execution of abortion doctors, but not specifying any by name, did not constitute a "true threat," but posters identifying specific doctors could be a "true threat").   The present action involves dissemination on the widest possible scale, through the Internet, and no identification of specific individuals or groups or locations.

In UD's final case, *U.S. v. Veifhaus*, 168 F.3d 392 (10th Cir.), *cert. denied*, 527 U.S. 1040 (1999), the defendant threatened fifteen cities with bombings.   In an age of terrorism, it is reasonable that threats of use of weapons of mass destruction need not target a specific person.   But in that case

---

[6](...continued)

that merely burning a cross was *prima facie* evidence of intent was unconstitutional.   The Court held that the requirement proof of intent was necessary to distinguish those times when cross-burning is protected under the First Amendment because the act is intended to communicate an idea (however distasteful) from those circumstances where the cross burning is intended to intimidate, which is not protected.   538 U.S. at 1550-51.   Thus, the decision and rationale of *Black* is consistent with *Baker*, in that communicating an idea, no matter how offensive, is protected, while violent action is not.

there were identifiable potential victims – identified by geographic location.  By contrast, in the present action there was not only no reference to a particular person, there was also no reference to a particular school, city, state or country. *Compare Baker*, 890 F.Supp. at 1388 (no true threat where there is no identification of specific target or city).

There was no statement of intent to act.  There were indicators that the reasonably intelligent reader would understand as indicating that the statements were not to be taken seriously.  There was no identification of a specific victim or victims, or anything approaching a reasonably specific location. The communication was to the world at large, and not directly to any specific individual(s). There was no history of violence of any kind from Mr. Murakowski or other conduct to lead anyone to believe he would commit violence.  UD asks the Court to set the bar to a new low, one so low that absent express warnings ("Murakowski did not include any disclaimer on those postings," UDAB 19) so as to protect the least intelligent of us, one is liable for a "true threat." That is constitutionally intolerable.

## B. THERE WAS NO SUBSTANTIAL DISRUPTION JUSTIFYING PUNISHMENT OF LAWFUL SPEECH.

UD argues that, even if Mr. Murakowski's postings did not constitute a true threat, UD is entitled to punish him because he was found guilty of disruptive conduct. (UDAB 20-22).  There are two flaws in this argument.

The first is that it is undisputed that, by allowing students to publish their own web pages with an express statement of policy of no censorship,  UD created a limited public forum.  This was not speech in a classroom or other school-controlled setting.[7]  Having given the students a forum and

---

[7]

(continued...)

free reign, UD abdicated its right of control, and so gave up the right to punish based on the content. *Husain v. Springer*, 494 F.3d 108, 121-24 (2nd Cir. 2007).

The second flaw is that UD determined there was disruption[8] based on the fact that one female student was made to feel scared and one or two other women were "uneasy." This evidence is far from sufficient.

For disruption to justify punishing otherwise protected speech, the disruption must be both substantial and material, *e.g., Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 513 (1969) (in high school context); *IOTA XI Chapter of Sigma Chi Fraternity v. George Mason University*, 773 F.Supp. 792, 794 (E.D. Va. 1991), *aff'd*, 993 F.2d 386 (4th Cir. 1993).

The Third Circuit has made clear that emotional distress to the listener or reader may not be the basis for punishment. *Saxe v. State College Area School Dist.*, 240 F.3d 200, 209 (3rd Cir. 2001). *See also Sypniewski v. Warren Hills Regional Bd. Of Educ.*, 307 F.3d 243, 264-65 (3rd Cir. 2002), *cert. denied*, 538 U.S. 1033 (2003) (policy prohibiting material that fosters ill will is not

---

[7](...continued)
*Morse v. Frederick*, 126 S.Ct. 2618 (2007), relied upon by UD, is not applicable for several reasons, including (i) it was deemed to involve speech in connection with a class activity, (ii) it involved grade school, not college, students (thereby implicating greater disciplinary needs), and (iii) the speech was deemed to promote illegal drug use, which the Court found schools may take steps to protect against. This has no relevance to a case involving to extra-curricular speech in a public forum in a university setting.

Similarly inapposite is UD's citation to *Boim v. Fulton County School Dist.*, 494 F.3d 978 (11th Cir. 2007). In that case, unlike the present case, the writing referred to shooting a specific individual. It is noteworthy that, although UD attempts to defend itself by invoking the Virginia Tech shootings, there is no reference to guns or shooting in Mr. Murakowski's website.

[8]
The ruling against Mr. Murakowski never said that there was material and substantial disruption, only that there was disruption.

constitutional as "[t]he focus of the phrase is entirely on the reaction of listeners. But by itself, an idea's generating ill will is not a sufficient basis for suppressing its expression"); *Tinker,* 393 U.S. at 508 ("mere desire to avoid the discomfort and unpleasantness that always accompanies an unpopular viewpoint" is insufficient); *Barber ex rel. Barber v. Dearborn Public Schools*, 286 F.Supp.2d 847, 856-57 (E.D. Mich. 2003) (one student's angry reaction to other student's t-shirt calling Pres. Bush an "international terrorist" did not constitute material and substantial disruption).

In light of the foregoing, the fact that one female student was scared, or that a couple of other people were "uneasy" (UD561), is insufficient. Much more is required. *Tinker*, 393 U.S. at 508-09 (Court found no evidence that wearing black armbands "materially and substantially interfere[d] with the requirements of appropriate discipline in the operation of the school[s]" as there was "no indication that the work of the schools or any class was disrupted" and "[o]utside the classrooms, a few students made hostile remarks to the children wearing armbands, but there were no threats or acts of violence on school premise"); *Weaver v. Nebo School Dist.*, 29 F.Supp.2d 1279, 1285 (D. Utah 1998) (a few complaints, and one student stating that she felt uncomfortable, did not equal material and substantial disruption); *Clark v. Dallas Ind. School Dist.*, 806 F.Supp. 116, 120 (N.D. Tex. 1992) (a few complaints does not equate to material and substantial interruption); *Killion v, Franklin Regional School Dist.*, 136 F.Supp.2d 446, 455-56 (W.D. Pa. 2001) (one person upset and had a hard time doing his job, another reduced to tears, was not a material and substantial disruption). There must be objective evidence of actual or potential disruption, such as cancellation or prevention of classes, *Tinker*, 393 U.S. at 508-09; *Layshock v. Hermitage School Dist.*, 496 F.Supp.2d 587, 599-600 (W.D. Pa. 2007).

11

There was no evidence of actual substantial and material disruption. Moreover, there was no objective evidence from which UD could reasonably conclude that there was a reasonable risk of substantial and material disruption. For example, there was no evidence that there was widespread knowledge of Mr. Murakowski's website, such that a fair number of people would be exposed to it. There is no evidence that such sorts of postings have ever disrupted the UD campus in the past. There is no evidence that, in the event of wider exposure, such exposure would disrupt classes. In the absence of evidence of substantial and material disruption of UD, Mr. Murakowski's rights were violated.

## II.    MR. MURAKOWSKI WAS DENIED DUE PROCESS.

In his opening brief, Mr. Murakowski demonstrated that he was denied due process in the hearing because he was given no opportunity to confront his accuser (whether directly or through some indirect manner to protect her subjective fears), and double hearsay was improperly utilized instead to establish disruption. (MOB 24-25).

UD responds that Mr. Murakowski is not entitled to all of the protections afforded a criminal defendant. (UDAB 13, 22-24). This is yet another of UD's rhetorical flourishes, disconnected from what Mr. Murakowski is arguing. Mr. Murakowski is arguing that he was entitled to such process that was due under the circumstances to ensure a fair hearing, and under these circumstances, no ability to test the subjective claims of the complainants denied him a fair hearing. *See Ryan v. Hofstra University*, 324 N.Y.S.2d 964, 967 (N.Y. Supr.1971) ("[s]omething different is called for by a criminal trial than a college disciplinary proceeding. But, the constant factor is that the procedure afforded must be traditionally fair and conscionable in the context taken").

First, it should be noted that this is one of the areas where the distinction between high school and college makes a difference. Post-secondary students facing suspension of several months are entitled to greater protections than high school students facing suspension of several days. *Bleicker v. Board of Trustees of Ohio State University, College of Veterinary Medicine*, 495 F.Supp. 1381, 1387 (S.D. Ohio 1980).

Second, it is the circumstance of this case that calls for enhanced protection. UD was basing its finding of disruptive conduct on the personal feelings of one student who said she was scared, and two others who said they felt "uneasy." UD claims that this did not require corroboration. (UAB 23). However, while it may be an easy matter for a fact-finder to accept without cross-examination a statement that a person was afraid or uneasy, causation and reasonableness are distinctly different matters, and Mr. Murakowski should have been given an opportunity to explore these issues.

For example, according to the e-mail from Ms. Davis-Robinson to Ms. Harvey stated that the woman was "dealing with a personal matter." (Murakowski Decl. Ex. F). Was this "personal matter" related to Mr. Murakowski? Was this student dealing with any other pressures? Did this student have any pre-existing psychological or emotional issues unrelated to Mr. Murakowski? Was she on any medication? What specifically was it about Mr. Murakowski's website that disturbed her? Although she feared Mr. Murakowski would retaliate against her for reporting him, did she believe that his website was a threat against her personally?

What exactly caused her to switch to "audit" status – the website, her fear of retaliation from her reporting him, both, something else? Did she switch to audit status for all her classes or only one (as noted previously, there is some evidence that it might be only one)? If Mr. Murakowski had apologized to her and said he did not intend it to upset her, would that have helped?

13

As for the students who were "uneasy," in addition to the questions raised above, it would be helpful to both sides to know exactly what that meant. Did they feel personally threatened?

If UD was sincerely interested in the truth, and in encouraging good relationships between students, it would have taken some steps to permit a fair hearing. But that does not appear to have been the agenda.

As noted in his opening brief, Mr. Murakowski is not insisting that direct cross-examination would necessarily have been required. But some form of adversarial investigation was necessary. It could have been cross-examination with the witnesses screened off to protect their identities. It could have been by an advocate on behalf of Mr. Murakowski with Mr. Murakowski out of the room. Representatives of UD and Mr. Murakowski could have interviewed the witnesses outside of and before the hearing. There were alternatives.

UD argues that there was no need to actually prove that someone felt threatened, only that a reasonable person would have interpreted the postings as a threat. That may be true on the issue of "true threats," but it misses the point. The issue is disruption (UD never made a "true threat" analysis). To prove disruption, there must be evidence of actual or potential disruption. And to prove that in this case, there had to be a causative link between these missing witnesses' subjective states and Mr. Murakowski's website.[9] Moreover, the causative connection had to be reasonable. For example, supposed a complainant, before even having seen Mr. Murakowski's website, was highly-strung, seeing a psychiatrist and on prescription anti-anxiety medication. Can a statement of fear from such a witness reasonably form the basis for a claim of disruption?

---

[9]

Nothing in Ms. Davis-Robinson's e-mail says that the student's fear arose from Mr. Murakowski's website. Indeed, there is no reference to Mr. Murakowski's website in that e-mail.

Moreover, neither Ms. Harvi nor Ms. Davis-Robinson were identified as having sufficient training in psychiatry or psychology that they were able to offer an opinion as to the reasonableness of the complainants' reactions.

In light of the foregoing, due process required a meaningful opportunity for Mr. Murakowski to test the issues of causation and reasonableness to defend himself against charges of disruptive conduct which (apart from its unconstitutional basis) was based solely on the double-hearsay evidence about the subjective feelings of a couple of students.

## III.    THE CONVICTION FOR FAILURE TO COMPLY DOES NOT JUSTIFY AFFIRMING THE SUSPENSION.

Apparently recognizing the weakness of its position regarding Mr. Murakowski's First Amendment claim, UD emphatically argues that Mr. Murakowski's conviction on the failure to comply charge alone justifies dismissing the case. (UDAB 14-15).  UD cites no legal authority supporting its position, but instead relies on general pronouncements that colleges have authority to adopts rules to promote discipline. That, however, is not the issue.

The real issue raised by UD is whether the Court may dismiss this action, or otherwise find for UD, notwithstanding a violation of civil rights, because there was also a conviction of a separate charge, not directly involving constitutional rights, as to which suspension was a possible (but not pre-ordained) sanction.

There is nothing in the record that indicates that (i) suspension is a mandatory sanction for Failure to Comply, or (ii) even without the prejudicial evidence and Disruptive Conduct conviction, suspension would necessarily have been the resulting sanction.  Nor has UD provided any precedent

15

authorizing a court to apply a particular sanction to a violation in the absence of any such evidence that, but for the charge that was a constitutional violation, the same result would have obtained.

To the contrary, in such circumstances, the proper action is to remand to allow the tribunal to decide the appropriate sanction (or even if it desires to continue to press the issue). *E.g., Barrett v. Virginia State Bar*, 611 S.E.2d 375, 384 (Va. 2005) (where some but not all disciplinary violations were overruled, matter remanded for reconsideration of sanction); *Burdge v. State Bd. of Medical Examiners*, 403 S.E.2d 114, 117 (S.C. 1991) (same); *Allen v. Oregon State Penitentiary Corrections Div.*, 581 P.2d 964 (Or. App. 1978) (where there are charges of disruptive behavior and disobedience of an order, and on appeal prison concedes that there is no evidence of disruptive conduct, court remands for reconsideration of sanction).

UD points to an e-mail from Scott Mason, the Hearing Officer, to the UD Appeal Board, in which Mr. Mason defends his decision, and states that Mr. Murakowski's conviction of Failure to Obey is "worthy of suspension." (UDAB 14 & n. 11). Apart from the obvious self-interest of Mr. Mason in not having his decision reversed, there is nothing in the evidence that makes it clear that, had he found Mr. Murakowski not guilty of the Disruptive Conduct charge, and had not consider the contents of the website which clearly offended him, he would have issued a suspension. Nor is there evidence that such a suspension would have been upheld by the Appellate Board if the issue had been presented to it free of the content of Mr. Murakowski's webstie. The only thing Mr. Mason's letter proves is that, if this issue is remanded and UD re-tries Mr. Murakowski, Mr. Mason cannot sit as the hearing officer as he has pre-judged the sanction.[10]

---

[10] UD also cites extensively to a transcript ruling of the Court of Chancery involving a UD
(continued...)

If there was a violation of Mr. Murakowski's civil rights (and there was), Mr. Murakowski is entitled to vindication, and to clear his name and reputation of that particular charge. UD may not prevent that merely because it is determined to break Mr. Murakowski as a lesson to others. As such, the Court may not find against Mr. Murakowski simply because he may be subject to a potential sanction for Failure to Comply, be it lesser, equal to or greater than that which was originally issued.

## IV.   THE COURT SHOULD AWARD MR. MURAKOWSKI HIS COSTS, DAMAGES AND ATTORNEY'S FEES.

UD does not dispute Mr. Murakowski's right to recover costs and attorney's fees of successful. UD does challenge an award of lost income damages for the delay in Mr. Murakowski's graduation and entering the work force. UD claims that there is no evidence that Mr. Murakowski would be hired as a chemical engineer.

The evidence comes directly from UD. On its website, UD provides statistics as to employment of its graduates. According to UD, 80.3% of those responding to UD's survey reported that they obtained full-time employment upon graduation, and 18.1% did not obtain employment because they were continuing their education. (Ex. A hereto). This admission by UD is more than sufficient to meet the preponderance of the evidence standard.

---

[10](...continued)

student who was selling marijuana. (UDAB 14-15). Apart from broad generalized comments about the authority of colleges to discipline students in appropriate circumstances, that case offers nothing relevant to the specific issues in this action. Specifically, it did not address the issue of a court accepting unquestioningly a sanction imposed by UD where one of the charges that was the basis for the sanction is deemed unconstitutional. UD is obviously grasping at straws.

## **CONCLUSION**

As anticipated, UD invokes the Virginia Tech shootings, and asks the Court to find that its conduct was justified in light of that tragedy. Mr. Murakowski does not dispute that, in light of the shooting, it was reasonable of UD to make take interim steps to confirm that he was not a danger to others.[11]

But that is not the issue. Obviously, UD does not consider Mr. Murakowski a threat to public safety, as he was allowed to roam the campus freely prior to suspension, and, since the end of his suspension, has been re-admitted and permitted to return to his classes (although not his dorm room) and interact with students, teachers and others.

Instead, the issue now is the suspension of Mr. Murakowski, and the interpretation of his postings does not involve such extrinsic factors. Although UD (and the Court) may find Mr. Murakowski's writings to be in poor taste, even disturbing, they are not true threats, and there was no evidence of actual or potential disruption of UD's educational mission.

WHEREFORE, for the foregoing reasons, plaintiff Maciej Murakowski respectfully requests that this Court enter summary judgment in his favor and against defendant University of Delaware, (i) declaring that UD violated Mr. Murakowski's rights under the First and Fourteenth Amendments, (ii) ordering UD to expunge from its files and systems all record of the Disruptive Conduct

---

[11] Of course, the genuineness and sincerity of UD's claims are called into question by the fact that, prior to receiving a psychiatric evaluation, UD did not bar Mr. Murakowski from the campus altogether, but only from his dormitory. This indicates that UD did not think he was a threat to people on the UD campus in general. Indeed, there is nothing in the record to show that UD even thought Mr. Murakowski was a danger to anyone in his dormitory. UD has declined to explained why, if it truly believed that Mr. Murakowski posed a threat of rape, beatings and even murder, he was bot banned from the campus entirely pending psychiatric evaluation.

conviction, (iii) awarding Mr. Murakowski compensatory damages, (iv) awarding Mr. Murakowski his costs, including reasonable attorney's fees, and (iv) granting Mr. Murakowski such other and further relief as the Court deems just and fair.

Dated: April 25, 2008

Respectfully submitted,

 /s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for plaintiff Maciej Murakowski

19

**Office of
Institutional
Research and
Planning**

# University of Delaware



## Facts and Figures

UD Home    IR&P Home    Contact Us

Table of Contents

EMPLOYMENT AND EDUCATIONAL STATUS
OF BACCALAUREATES BY CURRICULUM
GROUP
*CLASS OF 2006*


Printer Friendly
Version

| Curriculum Group | Number in Class | Number of Respondents [1] | | Full-Time Employment % | Part-Time Employment % | Pursuing Further Education % | Still Seeking Employment % |
|---|---|---|---|---|---|---|---|
| | | n | % | | | | |
| Agriculture & Natural Resources | 167 | 61 | 36.5 | 52.5 | 6.6 | 36.1 | 3.3 |
| Arts & Sciences | | | | | | | |
|   - Humanities | 434 | 139 | 32.0 | 64.0 | 5.8 | 21.6 | 7.9 |
|   - Social Sciences | 884 | 292 | 33.0 | 55.8 | 5.5 | 29.1 | 7.2 |
|   - Life & Health Sciences | 150 | 54 | 36.0 | 33.3 | 5.6 | 50.0 | 7.4 |
|   - Physical Sciences | 234 | 84 | 35.9 | 59.5 | 4.8 | 29.8 | 4.8 |
| Business & Economics | 566 | 252 | 44.5 | 91.7 | -- | 4.0 | 4.0 |
| Engineering | 206 | 127 | 61.7 | 80.3 | -- | 18.1 | 1.6 |
| Health Sciences | 394 | 156 | 39.6 | 70.5 | 3.8 | 23.7 | 1.3 |
| Human Services, Edu. & Public Policy | 575 | 224 | 39.0 | 84.8 | 4.5 | 8.0 | 2.2 |
| **2006 University Total[2]** | **3,610** | **1,389** | **38.5** | **70.9** | **3.7** | **19.9** | **4.4** |

[1] *The 2006 Career Plans Survey represents survey respondents from the full baccalaureate graduating class.*
[2] *Eight (0.6%) of the 1,389 respondents indicated they are not seeking work. University total includes all curriculum groups.*
*Note: Percentages may not total to 100.0 because of rounding.*

Source: Data obtained through the Bank of America Career Services Center and the Office of Institutional Research & Planning Career Plans Survey.

Table of Contents

*Office of Institutional Research and Planning ~ 325 Hullihen Hall, Newark, Delaware 19716 ~ phone 302-831-2021*
*Copyright ©2008 University of Delaware. Updated: February 2008*