IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MACIEJ MURAKOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CA. No. 07-475 MPT |
| | ) | |
| UNIVERSITY OF DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT UNIVERSITY OF DELAWARE'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

BUCHANAN INGERSOLL & ROONEY

William E. Manning, Esquire (#697)
James D. Taylor, Jr., Esquire (#4009)
Jennifer M. Becnel-Guzzo, Esquire (#4492)
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801
(302) 552-4200
(302) 552-4295 (facsimile)
william.manning@bipc.com
james.taylor@bipc.com
jennifer.becnelguzzo@bipc.com
*Attorneys for Defendant University of Delaware*

May 9, 2008

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

STATEMENT OF FACTS .................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.    Murakowski's disregard for the command of a University official should result in judgment for the University. ............................................................................................2

    II.    Murakowski's website caused disruption on the campus. ..............................................4

    III.    Murakowski's postings were "true threats." ...................................................................8

    IV.    Murakowski received all that Due Process requires. ....................................................11

    V.    Murakowski is not entitled to costs, damages and attorneys' fees. ...............................13

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Barber v. Dearborn Public Schools*, 286 F.Supp.2d 847 (E.D. Mich. 2003) ............... 7

*Boim v. Fulton County School District*, 494 F.3d 978 (11th Cir. 2007) ............... 6, 8, 11

*Clark v. Dallas Independent School District*, 806 F.Supp. 116 (N.D. Texas 1992) ............... 7

*Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir. 1961) ............... 12

*Doe v. Pulaski County Special School District*, 306 F.3d 616 (8th Cir. 2002) ............... 9

*Fogel v. Grass Valley Police Department*, 415 F. Supp. 2d 1084 (E.D. Ca. 2006) ............... 10

*Gorman v. University of Rhode Island*, 837 F.2d 7 (1st Cir. 1988) ............... 3

*Herbert v. Washington State Public Disclosure Commission*,
   148 P.3d 1102 (Wash. App. 2006) ............... 5

*Husain v. Springer*, 494 F.3d 108 (2d Cir. 2007) ............... 5

*Jenkins v. Louisiana State Board of Education*, 506 F.2d 992 (5th Cir. 1975) ............... 7

*J. S. v. Bethlehem Area School District*, 807 A.2d 847 (Pa. 2002) ............... 6

*Killion v. Franklin Regional School District*, 136 F.Supp.2d 446 (W.D. Pa. 2001) ............... 7

*Layshock v. Hermitage School District*, 496 F.Supp.2d 587 (W.D. Pa. 2007) ............... 8

*Morse v. Frederick*, 127 S.Ct. 2618 (2007) ............... 5

*Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh*, 229 F.3d 435 (3d Cir. 2000) ............... 5

*Saxe v. State College Area School Dist.*, 240 F.3d 200 (3d Cir. 2001) ............... 7

*Schwartz v. Schuker*, 298 F.Supp. 238 (E.D.N.Y. 1969) ............... 3

*Sypniewski v. Warren Hills Regional Board of Education*, 307 F.3d 243 (3d Cir. 2002) ............... 7

*Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969) ............... 8

*U. S. v. Khorrami*, 895 F.2d 1186 (7th Cir. 1990) ............... 11

*U. S. v. Veifhaus*, 168 F.3d 392 (10th Cir. 1999) ............... 11

*Virginia v. Black*, 538 U.S. 343 (2003) .................................................................................. 10

*Wagner v. Fort Wayne Community Schools*, 255 F.Supp.2d 915 (N.D. Ind. 2003) ..................... 12

*Weaver v. Nebo School District*, 29 F.Supp.2d 1279 (D. Utah 1998) ............................................ 7

*Widmar v. Vincent*, 454 U.S. 263 (1981) ........................................................................................ 5

*Winkfield v. University of Delaware*, Del. Ch., C.A. No. 2102-N,
   Noble, V.C. (May 2, 2006) ........................................................................................................ 4

**Statutes**

42 U.S.C. §1983 ............................................................................................................................ 13

## **STATEMENT OF FACTS**

While Plaintiff Maciej Murakowski ("Murakowski") apparently disputes the University's view of irrelevant and immaterial facts, he concedes at the outset that these quarrels do "not constitut[e] a dispute of material fact precluding summary judgment . . . ." A.B. at 2.[1] For that reason, the University will not rehearse its summary of those unimportant facts, except to say that it stands by the statements in its Answering Brief. Most importantly, the parties agree summary judgment is appropriate in this case.

Murakowski *does not* dispute that he entered his dormitory on at least one occasion – a direct violation of Ms. Cummings' clear command. Nor does he dispute that he permitted another student to use his PDI to access his dormitory several other times – a clear violation of an important University regulation promoting dorm security. In the words of the hearing officer, Murakowski's failure to comply with Ms. Cummings' directive "alone is worthy of a semester suspension because clearly if he has no respect for a senior [administrator] then will he ever listen to an RA, Hall Director, professor, etc.? He needs to understand this failure to comply is not acceptable." Mr. Mason's letter to the Appellate Board, B78.

---

[1] References herein to Plaintiff's answering/reply brief filed on April 25, 2008 will be: "A.B. at __."

# ARGUMENT

Plaintiff's Reply Brief is salted with snide comments and minor disputes of fact that neither excuse his misbehavior nor support his claims in this case. He does not challenge the Failure to Comply violation and apparently agrees there are circumstances in which threats may be punished notwithstanding the First Amendment. Nor does he quarrel with the decisional law granting universities broad authority to discipline disruptive conduct. In the end, Mr. Murakowski is left with an unsuccessful attempt to distinguish his misconduct from the misconduct described in cases approving sanctions by the respective institutions and hopes that the matter will be remanded to the University for a "re-sentencing."

There is no basis to do so. As the University discusses below, the hearing officer explained that suspension would be imposed for the Failure to Comply violation alone. No more is required to reject Murakowski's challenge and, on that fact alone, judgment should be entered for the University. And, even if the Court were to reach Plaintiff's constitutional claims, Murakowski's violent postings are not protected by the First Amendment and he was afforded all the Due Process that is required.

**I.  Murakowski's disregard for the command of a University official should result in judgment for the University.**

Neither Plaintiff's First Amendment nor Due Process claims are directed at his Failure to Comply violation. A.B. at 15-16. Murakowski does not (indeed, cannot) attack the hearing officer's findings, and admits that "suspension was a possible (but not pre-ordained) sanction" for that charge. *Id.* The University could rest its defense on that statement alone and can comfortably agree that suspension was not "preordained." Once it is established (and here it is not disputed) that the sanction was appropriate and would have been imposed for that violation alone, the case is over.

As the University explained in its Opening Brief, a hearing officer has broad authority under the University's Student Guide to University Policies to impose a sanction. O.B. at 15. Students are warned that any one or more sanctions may be applied to a particular violation, and Murakowski was already on probation at the time the sanction was imposed. Murakowski ignores all that in his brief. He also ignores *Schwartz v. Schuker*, 298 F.Supp. 238, 242 (E.D.N.Y. 1969) which held that expulsion (not just suspension) would be appropriate for ignoring the command of a school official.[2]

Plaintiff claims that "apart from the obvious self-interest of Mr. Mason in not having his decision reversed, there is nothing in the evidence that makes it clear that" suspension would have resulted if the Disruptive Conduct charge was not present. A.B. at 16. Murakowski thus asks for a remand to permit a "re-sentencing" on this charge.[3] *Id.* But, the hearing officer addressed this very question:

> ***Even if one were to consider reversing my decision on disruptive conduct***, he makes no appeal, nor is there room for one, for his blatant failure to comply with (at the time) one of the two highest senior administrators in Student Life. ***This alone is worthy of a semester suspension because clearly if he has no respect for a senior [administrator] then will he ever listen to an RA***, Hall Director, professor, etc.? He needs to understand this failure to comply is not acceptable.

B78 (emphasis added). How could the record be clearer on this point? And, regarding Plaintiff's claim that Mr. Mason was "self-interest[ed]," he faces a heightened burden to produce evidence supporting that claim. *See Gorman v. University of Rhode Island*, 837 F.2d 7, 15 (1st Cir. 1988). Simply noting that the hearing officer, per University protocol, explained his

---

[2]  Of course, as Plaintiff felt compelled to note in his brief, "it would be improper for [plaintiff] to withhold [his] arguments for [his] [sur]reply brief." A.B. at 6 (citing Del. Local R. 7.1.3(c)(2)). Thus, it is too late for Murakowski to make a contrary argument.

[3]  The cases allegedly supporting "remands" are wholly irrelevant. *See* A.B. at 16. None involve college disciplinary affairs and none included a specific statement from the hearing officer confirming that the same punishment would have been meted for the "surviving" violation.

3

decision to the appellate panel does not come close to meeting that heavy burden; nor does he claim that the hearing officer must have been infected by his findings on Disruptive Conduct. There is no evidence to support that claim. Instead, the hearing officer's own words prove that he considered each violation separately and would have imposed the same penalty for either.

Plaintiff also claims the University has offered "no legal authority supporting its position" that the presence of the Failure to Comply violation alone justifies judgment in its favor – as if the University had a burden to justify the propriety of its particular sanctions for student misconduct. No such burden exists and, as the University demonstrated in its first brief, this Court's role is to consider whether the hearing officer *could* have imposed the sanction rather than whether he *should* have done so. O.B. at 15. That is precisely the holding of *Winkfield v. University of Delaware*, Del. Ch., C.A. No. 2102-N at 19-20, Noble, V.C. (May 2, 2006) (Ruling of the Court):

> Whether this is the right sanction or not is really not the question before [the Court]. ***The question is whether the University, on the facts before it and the charges and facts set forth in the charging papers, could impose such a sanction in a manner consistent with due process*** . . . .

O.B. at Exhibit A.[4]

## II.  Murakowski's website caused disruption on the campus.

Even if the Court decides to consider Plaintiff's First Amendment claims, Murakowski should not be surprised that his works caused or had the potential to cause disruption – that's precisely what he set out to do by "shock[ing]" the University and its students with his website. Complaint at ¶9.

---

[4] Murakowski criticizes *Winkfield* as "offer[ing] nothing relevant to the specific issues in this action" and says the University is "grasping at straws." A.B. at 17 n.10. To the contrary, *Winkfield* is the clearest enunciation of a court's role in reviewing a sanction imposed by the University.

His "defenses" do not aid him. Murakowski first argues that the University "abdicated its right of control, and so gave up the right to punish based on the content" by permitting speech on University-provided web space. A.B. at 10. He says it is "undisputed" that the University-provided web space comprised a limited public forum.[5] A.B. at 9. The University responded that violent postings could be punished notwithstanding the type of forum – threatening speech is always subject to discipline. O.B. at 17. Murakowski's latest brief offers no authority limiting a university's right to punish disruptive statements regardless of the forum. His reliance on *Husain v. Springer*, 494 F.3d 108 (2d Cir. 2007), is misplaced as it did not involve threatened violence but rather the endorsement by a student newspaper of a particular slate of student government candidates. Indeed, the Supreme Court recently upheld the punishment of a student who unfurled a banner promoting drug use while standing on or near a street – a traditional public forum typically entitled to the greatest level of First Amendment protection. *See Morse v. Frederick*, 127 S.Ct. 2618, 2626-27 (2007) (noting that First Amendment rights are "circumscribed 'in light of the special characteristics of the school environment.'") (citations omitted).

The University had the right to punish protected speech – yes, even protected speech – if the postings did or were likely to prompt a disruption on the campus. *See id.*; *Widmar v. Vincent*, 454 U.S. 263, 277 n.5 (1981) (the Supreme Court affirmed "a university's right to exclude even First Amendment activities that violate reasonable campus rules or substantially interfere with the opportunity of other students to obtain an education."); *Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh*, 229 F.3d 435, 445 (3d Cir. 2000) (recognizing that even First Amendment activities "need not be tolerated where they infringe reasonable campus rules,

---

[5]   *Compare Herbert v. Washington State Public Disclosure Commission*, 148 P.3d 1102, 1109 (Wash. App. 2006) (finding that school computer system was non-public forum).

interrupt classes or substantially interfere with the opportunity of other students to obtain an education."). In other words, it does Murakowski no good to assert that his speech might have been entitled to protection (had it caused no disruption) or that the forum was a limited public forum.

Murakowski's next argument – *i.e.*, that the disruption caused by his violent postings was insufficient to warrant punishment – also fails. He apparently believes that the University must wait until classes are cancelled and the campus essentially shut down before it may react. But "while there must be more than some mild distraction or curiosity created by the speech, complete chaos is not required for a school district to punish student speech." *J. S. v. Bethlehem Area School District*, 807 A.2d 847, 868 (Pa. 2002).

The facts here establish that Murakowski's website did cause a substantial disruption to the University community – one student sought counseling and changed at least one class to listener status; a parent called the University to express concern over Murakowski's postings; the brother of a student complained to the University police, and the University police, after learning about and reviewing Murakowski's website, spoke to senior administrators about the potential for violence. *See* B13-15, 27. Nothing more was necessary to justify the University's reaction and one suspects that only the Plaintiff would make such an argument in the wake of Virginia Tech. *See, e.g., J. S.*, 807 A.2d at 868 (student website containing violent postings found to cause a significant disruption when a teacher was unable to perform her job, certain students expressed anxiety over the website and sought counseling and parents voiced concerns for school safety); *Boim v. Fulton County School District*, 494 F.3d 978 (11th Cir. 2007) (court upheld suspension of student who wrote a story in which she describes shooting a teacher, concluding that such actions caused and were reasonably likely to further cause a substantial disruption

6

within the school even though there is no indication that students or parents had expressed concern or fear about the story).

Murakowski cites a handful of cases as if they support his argument that the disturbance caused by his website was insufficient to warrant punishment.[6] However, none involved violent postings or anything remotely like those Murakowski wrote here. *See Saxe v. State College Area School Dist.*, 240 F.3d 200 (3d Cir. 2001) (facial challenge to a school anti-harassment policy); *Sypniewski v. Warren Hills Regional Board of Education*, 307 F.3d 243 (3d Cir. 2002) (student punished for wearing a t-shirt containing the word "redneck" to school); *Barber v. Dearborn Public Schools*, 286 F.Supp.2d 847 (E.D. Mich. 2003) (student punished for wearing a t-shirt with a photograph of President Bush and the caption "International Terrorist"); *Weaver v. Nebo School District*, 29 F.Supp.2d 1279 (D. Utah 1998) (teacher instructed not to discuss her sexuality outside the classroom and denied opportunity to coach a school team because of her sexual orientation); *Clark v. Dallas Independent School District*, 806 F.Supp. 116 (N.D. Texas 1992) (students forbidden from promoting their religious beliefs on school grounds; however, while the court concluded that a few student complaints about the distribution of written materials was not sufficient to establish a substantial disruption, the court also found that with respect to the oral proselytizing, the use of bullhorns to deliver the message, the large crowds gathered to hear the message and the fact that the proselytizing interfered with other students going to class were sufficient to overcome the students' motion for summary judgment on that claim); *Killion v. Franklin Regional School District*, 136 F.Supp.2d 446 (W.D. Pa. 2001)

---

[6] Murakowski argues that the hearing officer's decision letter does not reference "material and substantial" disruption, only "disruption." A.B. at 10. However, because a student disciplinary process need not contain the trappings of a criminal trial, its writings also do not need to be drawn with the precision customarily expected by lawyers and reviewing courts. *See, e.g., Jenkins v. Louisiana State Board of Education*, 506 F.2d 992, 1000 (5th Cir. 1975) ("Due process in the context of [student disciplinary proceedings] is not to be equated with that essential to a criminal trial and the notice of charges need not be drawn with the precision of a criminal indictment.").

(student suspended for creating and distributing "top ten" list about the school's athletic director which was crude and offensive, but not violent or threatening); *Layshock v. Hermitage School District*, 496 F.Supp.2d 587 (W.D. Pa. 2007) (student punished for creating non-violent, non-threatening internet parody of principal).

Moreover, University officials were not required to wait for unfortunate or tragic consequences before acting, particularly in light of the numerous incidents of school violence in recent years. *See Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 514 (1969) (school officials need not wait for possible harm or material disruption, but may act upon "facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities"). Here, University officials were faced with a student's website filled with ugly references to rape, murder, mutilation and sexual oppression just three days after the Virginia Tech tragedy.[7] One can only imagine what would have happened if the University administrators did nothing, only to find that Murakowski later followed through with his threats. *See Boim*, 494 F.3d at 984 (court speculated about what would have happened if school had not punished author of violent story, particularly in light of recent incidents of school violence).

In short, the University had more than a sufficient basis to conclude that the materials on the website had or could have materially disrupted school life.

### III. Murakowski's postings were "true threats."

Even if the University must satisfy the stricter "true threat" test, the University submits that it can do so under these facts. Murakowski concedes that a "true threat" may be found

---

[7] In the days immediately following Virginia Tech, it was learned that the disturbed young man's stories and plays often involved violence. *See, e.g., Virginia Tech Gunman Raised Concerns With Disturbing Writing*, http://www.foxnews.com/ story/0,2933,266582,00.html.

8

where there is a "statement of intention,"[8] but argues that his postings do not "say that he actually intends to go out and murder, main *[sic]*, rape, torture, choke or otherwise hurt anyone." A.B. at 5.

Really? Murakowski said:

- he intended to obtain a sexual assault awareness t-shirt and "wear it while ***I'm raping*** some drunk girl in a dark alley," B41-45;

- he similarly thought it necessary to warn women "[n]o matter how I interpret them, shit. ***Don't walk alone with me*** at night, ladies[,]" B45;

- he desired "A small Asian girl [to] keep . . . tied up in the closet (like the brother does with his) and ***do unspeakable things to her when I got bored***[,]" B46-47;

- how he wanted "A katana. You know, one of those Japanese sword things that ***you flip out and kill people with***." B47.

Given those examples, we simply do not understand Murakowski's claim that he never expressed an intent to harm anyone.

Nor was it unreasonable for readers to be alarmed and frightened. Even if one credits Murakowski's claim that he did not mean what he wrote, Murakowski concedes (as he must) that his subjective intent is irrelevant, and argues instead that "there is objective evidence that the tone and intent of the pieces were such that a reasonable reader . . . would not interpret the writings as serious . . . ." A.B. at 6. This "objective evidence," he says, consists of the fact that other passages in the same posting were humorous and contained a "self-deprecating" description of himself as a "spindly pale virgin" who "won't be having sex anytime soon." A.B.

---

[8] Moreover, there is no requirement that the speaker intend to carry out the threat, nor is there any requirement that the speaker be capable of carrying out the threat. *See Doe v. Pulaski County Special School District*, 306 F.3d 616, 624 (8th Cir. 2002).

5-6. In other words, childish attempts at humor and introspection should have comforted all his readers and removed all threat from his words.

Not so. In one of his postings, he warns, "in case you are wondering, I'm serious." B67. Moreover, he brags in his Complaint that he intended to "shock" his audience. Complaint at ¶9. He should not be surprised that he succeeded in "shock[ing]" fellow students, their families, the University Police and University administrators into worrying that he might mean what he said.

In *Fogel v. Grass Valley Police Department*, 415 F.Supp.2d 1084, 1088 (E.D. Ca. 2006), the court noted "the reaction of listeners and the intent of the speaker are relevant to what a reasonable person might think." The Court's analysis in *Fogel* is particularly germane, holding that a jury could find a "true threat" where one woman found the plaintiff's words sufficiently threatening to call the police, yet chose to remain anonymous, and where Mr. Fogel admitted that he intended to "scare" people. *Id.* Those facts bear striking resemblance to ours.

Plaintiff further relies on the broad nature of his threats and argues that a "true threat" may not be found where the targets are "all women." A.B. at 7. But, he posted these materials on the University's web-server, invited students to his website and made references to raping a woman during sexual assault awareness month – a series of events widely publicized and held on the University's campus. He threatened violence against women, particularly small Asian girls. In *Virginia v. Black*, 538 U.S. 343, 359 (2003), the Court explicitly held that "true threats" may be directed towards a "group of individuals." Moreover, the *Fogel* Court, 415 F. Supp. 2d at 1088, held that a van painted with a message that the author was a suicide bomber (along with various political messages) – but no identifiable target – could have been a "true threat" depending on whether the fact finder determined that it would be taken as a serious expression of intent to harm.

Murakowski seeks to distinguish *U. S. v. Khorrami*, 895 F.2d 1186 (7th Cir. 1990), because, while the threat there was directed at the entire Jewish faith, it was delivered to a specific location (the Jewish National Fund). He claims that those words "narrowed [the targets] down," A.B. at 8, but that begs the question: is it so different to threaten all women generally (or all small Asian girls) on a University-maintained website while advertising that site to fellow students? The University does not believe so.

Plaintiff also tries to distinguish *U. S. v. Veifhaus*, 168 F.3d 392 (10th Cir. 1999), *cert. denied*, 527 U.S. 1040 (1999), where a threat was aimed at fifteen American cities, claiming "in an age of terrorism, it is reasonable that threats of use of weapons of mass destruction need not target a specific person." A.B. at 8. If a threat aimed at fifteen cities in "an age of terrorism" is sufficiently focused to be sanctionable, so, too, are Murakowski's words "[i]n this climate of increasing school violence . . . ." *Boim*, 494 F.3d at 984. Does Plaintiff assert the writings of the Virginia Tech murderer, or any of the many other violent actors on campuses nationwide, were less threatening because they didn't name specific individuals? The University should not be asked to run that risk.

Murakowski finally argues that the University's reliance on school shooting cases and the tragedies that befell other schools is misplaced because he never threatened to shoot anyone – as if the University should be comforted by the fact that Murakowski threatened "only" to kidnap and rape and, perhaps, maim and murder. A.B. at 10, n. 7. The University takes no such comfort.

IV.    **Murakowski received all that Due Process requires.**

Murakowski continues to complain that he did not receive a "fair hearing" despite the fact that he received notice of the hearing, had an opportunity to question witnesses present for

11

the hearing, presented a defense, called witnesses to testify on his behalf, and had his case decided by an impartial hearing officer. *See Dixon v. Alabama State Board of Education*, 294 F.2d 150, 159 (5th Cir. 1961) (the court acknowledged that certain rights should be provided to an accused student, including notice of the charges, an opportunity for a hearing before a fair and impartial tribunal, notice of the witnesses against it and the opportunity to present its own defense).

The center of his argument, apparently, is that he did not have the opportunity to question the students who expressed concern and fear to the University regarding his postings. A.B. at 12. Due Process on a college campus, however, does not require that a student be given the opportunity to cross-examine witnesses and does not prohibit the use of hearsay, particularly where, as here, there are no disputed facts and no need to assess witness credibility. *See, e.g., Wagner v. Fort Wayne Community Schools*, 255 F.Supp.2d 915, 926 (N.D. Ind. 2003) (concluding that a school could proceed through hearsay evidence in an expulsion proceeding).

This was not a case where the hearing officer had to weigh two competing stories and determine for himself who was telling the truth. To the contrary, Murakowski admitted writing the postings and admits in his complaint that he did so precisely to "shock" his audience. He succeeded, and it was enough for the hearing officer to hear descriptions of frightened students, a frightened parent and concerned police officers and administrators in order to conclude that the postings had already caused some disruption and, left alone, might result in further disturbances on campus. As discussed earlier, the facts here provided a reasonable basis for the hearing officer to conclude that Murakowski's website had the potential to cause a future disturbance. Thus, even ***if there had not been testimony about the complaints that had already been lodged, the hearing officer still could have found Murakowski guilty of disruptive conduct.***

V.  **Murakowski is not entitled to costs, damages and attorneys' fees.**

Murakowski seeks costs, fees and lost income arising from the University's disciplinary actions. Naturally, those awards may only be made should Murakowski be a "prevailing party" under 42 U.S.C. §1983. Moreover, Murakowski retorts that his "evidence" of lost income "comes directly from UD." A.B. at 17. The chart he attaches, though, is neither evidence nor an admission, and instead contains generic statistics for the graduating class of 2006.

The chart catalogs responses from just 61.7% of graduates in the College of Engineering, and notes what percentage of those graduates obtained employment. See A.B. at Ex. A. It has no details about the salaries paid to those graduates, how many graduated within the traditional four years and what percentage of those students were chemical engineers. Nor does it indicate how many of these graduates shared Murakowski's penchant for "shocking" others. Quite simply, it proves nothing related to Mr. Murakowski, and most certainly does not satisfy his burden to prove damages beyond mere speculation.

## **CONCLUSION**

Murakowski does not challenge the Failure to Comply violation, and asks only that the Court, if it finds for Plaintiff on his constitutional challenges to the Disruptive Conduct violation, remand to the University for a "re-sentencing." There is no reason to do so, though, where the unbiased hearing officer explained that he would have imposed a semester suspension for the Failure to Comply violation alone. Nor should Plaintiff prevail on his constitutional claims. He received the Due Process to which he was entitled, and the First Amendment does not bar the University from punishing "true threats" or even lesser statements that are disruptive – or have the potential to be disruptive – on campus.

BUCHANAN INGERSOLL & ROONEY

*/s/ William E. Manning*

William E. Manning, Esquire (#697)
James D. Taylor, Jr., Esquire (#4009)
Jennifer M. Becnel-Guzzo, Esquire (#4492)
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801
(302) 552-4200
(302) 552-4295 (facsimile)
william.manning@bipc.com
james.taylor@bipc.com
jennifer.becnelguzzo@bipc.com
*Attorneys for Defendant University of Delaware*

May 9, 2008